IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GREEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESSE R. GREEN, APPELLANT.

Filed August 29, 2023.    No. A-23-085.

Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

Jesse R. Green, pro se.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jesse R. Green was convicted in the Douglas County District Court of terroristic threats and use of a deadly weapon (firearm) to commit a felony. On appeal, he challenges the sufficiency of the evidence to sustain his convictions. After reviewing the record, we find the evidence was sufficient to support his convictions; thus, we affirm.

## BACKGROUND

On November 27, 2021, Green received a call from his sister, Felecia Green, who told him that she had been "jumped" by two women they both knew, Nikita Phelps and Persha Cooper. Believing Phelps and Cooper to be "gang affiliated," Green drove roughly 20 minutes to his sister's house. When he arrived, Phelps and Cooper were seated in Cooper's car in front of Felecia's house. Green exited his vehicle with two handguns and pointed them at Phelps and Cooper. He was subsequently charged with two counts each of terroristic threats and use of a deadly weapon to

commit a felony. Prior to trial, the State dismissed one count of terroristic threats and one count of use of a deadly weapon to commit a felony.

At trial, Cooper testified that following an altercation with Felecia, she and Phelps were sitting in Cooper's car outside of Felecia's house waiting for Phelps' daughter to come out. Green drove up, parked behind her vehicle, and approached them with two pistols pointing down at her. Cooper got out of her car and tried to reason with him, but Green pointed the guns at her head. Cooper recalled she felt, "Intimidated completely. I mean, it scared the heck out of me." After Cooper spoke to Green for roughly a minute or two, Green decided he needed to verify Cooper's story with Felecia. He put both guns in his car and walked into the house.

While this was transpiring, Phelps called the police. Prior to their arrival, however, Green came back out of the house, and he and Cooper "had words again."

Officer Jacob Sunderman testified that he was on duty as an Omaha police officer on November 27, 2021, when he received a dispatch of an armed disturbance. When he arrived at the scene, he identified four parties in the street: Phelps, Cooper, Green, and Felecia. Due to the information received in the dispatch, Sunderman immediately placed Green in handcuffs. Green informed him that he had two guns in his car, and he had "pulled" them, which Sunderman interpreted to mean the guns were "actively out."

Officer Matthew Herrick also assisted at the scene. He testified that he saw a revolver-style handgun and a semiautomatic handgun on the front seat of Green's vehicle. He removed them from the vehicle and determined that there was not a round in the semiautomatic handgun and there were five rounds in the cylindrical chamber of the revolver, but not in the chamber itself. Herrick removed the ammunition and took the guns to police headquarters as evidence.

Green, who was representing himself, did not testify, but argued in closing that his actions were justified because he was defending his family and because Cooper had a bottle in her hand, which he viewed as a weapon. The district court rejected the defense of others argument and found Green guilty of terroristic threats and use of a weapon to commit a felony. Green was later sentenced to 30 to 31 days' imprisonment for his terroristic threats conviction and 5 years to 5 years and 1 day for use of a deadly weapon to commit a felony conviction. The sentences are required by law to run consecutively. Green appeals his convictions.

ASSIGNMENT OF ERROR

Green assigns that there was insufficient evidence to find him guilty of terroristic threats and use of a deadly weapon (firearm) to commit a felony.

STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Bryant*, 311 Neb. 206, 971 N.W.2d 146 (2022). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

ANALYSIS

*Terroristic Threats.*

Green assigns that there was not sufficient evidence to convict him of terroristic threats because when he pointed his guns at Phelps and Cooper, the safety was on and there was no bullet in the chamber. He argues that since his weapons did not pose a threat, there could be no threat to commit a crime of violence. Aside from not having raised this argument at trial, Green misconstrues the elements of the crime.

A person is guilty of making terroristic threats if he or she threatens to commit any crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror. See Neb. Rev. Stat. § 28-311.01 (Reissue 2016). The intent to terrorize another, for purposes of the crime of terroristic threats, is an intent to produce intense fear or anxiety in another. *State v. Bryant, supra*. Whether a particular conduct constitutes a threat depends on the context of the interaction between the people involved. *Id*. Section 28-311.01 does not require that the recipient of the threat be actually terrorized, and it does not require an intent to execute the threats made. *State v. Bryant, supra*.

Green admitted to officers at the scene that he arrived at Felecia's house and exited his vehicle with both guns in his hands. Green also told officers he yelled at Phelps and Cooper and asked them why they were "jumping" his sister and "what are we on." Green pointed his guns at Cooper twice, and Cooper thought Green was going to shoot her. Given the context of the interaction, a rational trier of fact could find the evidence was sufficient to prove that pointing a gun at Cooper constitutes a terroristic threat.

Green's conclusion that the evidence was insufficient rests on his argument that pointing a gun that has the safety on and does not have a bullet in the chamber cannot be a crime of violence because it does not pose a danger to the victim. Any relevant fact about the gun's operability relates to whether Green had an intent to *execute* upon the threats made, which is not a requirement to establish a terroristic threat. See *State v. Bryant, supra*. Rather, the question before us is whether a rational trier of fact could find that pointing a gun at a person with either the intent to terrorize or in reckless disregard of the risk of causing such terror constitutes a threat to commit a crime of violence. We hold that it does. See *State v. Oldenburg*, 10 Neb. App. 104, 628 N.W.2d 278 (2001) (concluding that because pointing gun at person can constitute criminal assault, pointing of gun can be threat to commit crime of violence). See also *State v. Brauner*, 192 Neb. 602, 223 N.W.2d 152 (1974) (pointing of unloaded weapon at another is assault if person aimed at does not know it is unloaded).

We reject Green's argument that because the safety was on and there was no bullet in the chamber, the act of pointing the gun at Cooper did not constitute a terroristic threat.

*Use of Deadly Weapon to Commit Felony.*

Green argues there was insufficient evidence to convict him of use of a deadly weapon to commit a felony. His argument is contingent on a finding that there was insufficient evidence to convict him of terroristic threats, because then there would be no underlying felony conviction to support the conviction. However, as stated above, there was sufficient evidence to find him guilty of terroristic threats.

Under Neb. Rev. Stat. § 28-1205 (Reissue 2016), any person who uses a firearm or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony. Green does not dispute that he was in possession of two firearms and pointed them at Phelps and Cooper. Since he was convicted of terroristic threats, which is a Class IIIA felony, there was sufficient evidence to convict him of use of a deadly weapon to commit a felony.

## CONCLUSION

Having found that the district court did not err in finding sufficient evidence to sustain Green's convictions, we affirm.

AFFIRMED.